No. 4955.

IN RE QUAKER REALTY COMPANY, LIMITED,
PRAYING FOR CONFIRMATION OF TITLE.

W. W. Wall for plaintiff and appellant.

L. A. Hubert, Curator ad hoc.

J. P. Sullivan attorney.

I. D. Moore and J. F. C. Waldo for appellant.

GODCHAUX, J.—In October, 1907, the Quaker Realty Company, Limited, in accordance with Section 3 of Act 109 of 1898, filed proceedings to quiet its tax titles to four squares of ground in this city. The City of New Orleans, through its Assistant City Attorney, answered by a general denial, but was not represented at the trial of the case, and, in December, 1907, judgment was rendered and signed in favor of the Realty Company, as prayed for by it. About two years thereafter, namely, November 24, 1909, the City filed in the same proceeding a petition to annul this judgment, and its petition having been dismissed upon the maintenance of a plea of no cause of action leveled against it, the City prosecutes the present appeal.

The petition of the City alleges that, though in the main suit which resulted in the judgment attacked, the City failed to disclose or offer evidence in support of its

— 296 —

title, yet it in fact had good defenses to said suit and a valid title to an undivided one-half interest in the property in dispute, the title being derived from the late John McDonogh, who, by his last will, bequeathed the property jointly to the cities of Baltimore and New Orleans, in trust for the people of these communities for public uses and purposes; that the property was and is **hors de commerce,** not subject to adverse possession or acquisition, nor to assessment, levy or sale for taxes and that consequently its acquisition, through successive tax sales or otherwise, by the Realty Company is null, void and of no effect.

After attacking the tax titles upon other grounds, the petition discloses that the Realty Company had filed a multitude of suits of like character, but in which the City had no interest other than to urge any claim it might have for delinquent taxes and that the Assistant City Attorney in charge neglected through oversight to urge the City's valid claims to the property, being misled into believing that the sole interest of the City therein was to claim, as in the other cases, the payment of any taxes, that might be due and delinquent.

If, as recited in the petition, the property in question is inalienable by the City and was donated to and is held by it in trust for its people for public purposes, it is inconceivable how the City or the people for whom the property is held in trust can be stripped of their interest therein by the lapse or neglect, excusable or otherwise, of any officer of the City; for to hold otherwise would be to concede that the City might, by indirection, though not directly, alienate or divert the trust estate. The statement of the proposition is its best refutation, and consequently if the allegations of the petition be true as to the tenure of the City and the public nature of the property the radical nullity of the decree attacked

would be no less pronounced had the City appeared and formally confessed judgment.

Moreover, there is no such showing of laches as would deprive the City of its right to annul, particularly as in dealing with municipalities administering public property, and where substantial injury might otherwise ensue, good conscience and the welfare of the community at large require the application of a more liberal rule than in the case of ordinary litigants.

"For the error of fact of one or two of its numerous officers, the municipality should not be allowed to suffer. * * *

"The fact that the City is in some sense to be regarded in the same light as a minor, should induce liberal protection than would fall to the lot of the Courts to extend to it, in their discretion, a more ordinary litigant."

**Lindner vs. City, 3 Ct. of App. 361.**

Entertaining these views, and being of the opinion that the City has disclosed a cause of action, it was error on the part of the lower Court to have maintained defendant's exception.

Accordingly the judgment appealed from is reversed; the exception of no cause of action filed by defendant is now overruled and the cause remanded to the lower Court to be proceeded with according to law, defendant and appellee to pay the costs of appeal and the costs of the lower Court to await the final determination of the case.

Reversed and remanded.